Mark T. Bennett, Esq. (SBN 89061)
Stephen J. Schultz, Esq. (SBN 90187)
Slovak Baron Empey Murphy & Pinkney LLP
2240 Fifth Ave.
San Diego, CA 921011
Telephone: (619) 501-4540

Ángel J. Valencia (D.C. Bar No. 1552471) (*Pro Hac Vice*)
Milton L. Chappell (D.C. Bar No. 936153) (*Pro Hac Vice*)
c/o NATIONAL RIGHT TO WORK LEGAL
DEFENSE FOUNDATION, INC.
8001 Braddock Road, Suite 600
Springfield, Virginia 22151
Telephone: (703) 321-8510

Attorneys for Plaintiffs and the Classes They Seek to Represent

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PABLO LABARRERE, SAM DOROUDI, individually and as representatives of the requested classes,<br><br>                                        Plaintiffs,<br><br>v.<br><br>UNIVERSITY PROFESSIONAL AND TECHNICAL EMPLOYEES (UPTE), CWA 9119; JANET NAPOLITANO, in her official capacity as President of the University of California.<br><br>                                        Defendants. | Case No. 20-cv-0444-CAB-WVG<br><br>PLAINTIFFS' ANSWERING MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF OMNIBUS RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE FIRST AMENDED COMPLAINT<br><br>Date: September 18, 2020<br>Courtroom: 4C<br>Judge: Hon. Cathy Ann Bencivengo<br>Trial Date: None set<br>Action Filed: March 10, 2020 |

# TABLE OF CONTENTS

                                                                        **PAGE**

I.    INTRODUCTION ......................................................................1

II.   STANDARD OF REVIEW.........................................................3

      a.  Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) .........3

      b.  Motion to Dismiss for Lack of Subject Matter Jurisdiction under
          Federal Rule of Civil Procedure 12(b)(1)...................................4

III.  UPTE AND NAPOLITANO VIOLATE THE FIRST AMENDMENT
      BY DEDUCTING AND COLLECTING UNION DUES FROM
      BARGAINING UNIT MEMBERS WITHOUT ANY EVIDENCE
      OF A FIRST AMENDMENT WAIVER .........................................5

      a.  Extracting Dues Without Any Evidence of a First Amendment
          Waiver Violates the First Amendment.......................................5

      b.  To Establish a Valid First Amendment Waiver, It Must Be Proven
          By Clear and Convincing Evidence That the Purported Waiver
          Was Knowing, Voluntary, and Intelligently Made and Is Not
          Against Public Policy ....................................................10

      c.  Neither UPTE nor Napolitano Can Prove That Labarrere and
          Doroudi "Knowingly" or "Intelligently" Waived Their First
          Amendment Right Not to Subsidize UPTE................................14

IV.   THE REVOCATION RESTRICTION IS UNEFORCEABLE AGAINST
      PUBLIC POLICY.....................................................................17

V.    THIS CASE INVOLVES AN OVERWHELMING DEGREE OF
      STATE ACTION.......................................................................18

i

1

## TABLE OF CONTENTS (Cont.)

2

**PAGE**

3       a. Napolitano and UPTE Triggered State Action by Agreeing to
4          Deduct and Collect Money from Employees' Wages ..............................20

5

6           1. UPTE is a State Actor Under the Joint Action Test ...........................21

7

8           2. UPTE is a State Action Under the Governmental Nexus Test ...........23

9       b. The Dues Deduction Authorization is Not the Source of State
10         Action ................................................................................................23

11

12  VI.     CONCLUSION ............................................................................25

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# <u>TABLE OF AUTHORITIES</u>

2
<u>PAGE</u>

3
## <u>Cases</u>

4
*Aetna Ins. Co. v. Kennedy,*

5
   301 U.S. 389, 393 (1937)...................................................................................11

6
*Albino v. Vaca*,

7
   747 F.3d 1162, 1169 (9th Cir. 2014) ……………………………………… 4

8
*Allbirds, Inc. v. Giesswein Walkwaren AG,*

9
   2020 WL 1914779 at *2 (N.D. Cal. 2020)  ...................................................4, 12

10
*Anderson v. Serv. Employees Int'l Union Local 503,*

11
   2019 WL 4246688 at *3 (D. Or. Sept. 4, 2019) .................................................24

12
*Atlanta Printing Specialties v. NLRB,*

13
   523 F.2d 783, 785 (5th Cir. 1975) ....................................................................24

14
*Armstrong v. Meyers,*

15
   964 F.2d 948, 949-950 (9th Cir. 1992) .............................................................19

16
*Ashcroft v. Iqbal,*

17
   556 U.S. 662, 678 (2009).................................................................................3,4

18
*Asociación Puertorriqueña de Profesores Universitarios v. Estado*

19
*Libre Asociado y Otros,*

   2019 WL 2185047 (P.R. App. 2019)................................................................14

20

21
*Augustine v. United States,*

   704 F.2d 1074, 1077 (9th Cir. 1983) ..................................................................5

22

23
*Bell Atlantic v. Twombly,*

   127 S. Ct. 1955, 1965 (2007)..........................................................................3,4

24

25
*Brentwood v. Tennessee Secondary School Athletic Ass'n,*

   531 U.S. 288 (2001).........................................................................................23

26

27
*Broam v. Bogan,*

   320 F.3d 1023, 1028 (9th Cir. 2003) ..................................................................4

28

# TABLE OF AUTHORITIES (Cont.)

**PAGE**

## Cases

*Chang v. Chen,*
   80 F.3d 1293 (9th Cir. 1996) .................................................................4

*Circuit City Stores, Inc. v. Ahmed,*
   283 F.3d 1198, 1200 (9th Cir. 2002) ....................................................12

*City of Santa Monica v. United States,*
   650 Fed. Appx. 326, 327 (9th Cir. 2016)................................................5

*Cohen v. Cowles Media Co.,*
   501 U.S. 663, 672 (1991)..................................................12, 13, 21

*Cohen v. Cowles Media Co,*
   445 N.W.2d 248, 258 (Minn. Ct. App. 1989),
   a*ff'd in part, rev'd in part,* 457 N.W. 2d 199 (Minn. 1990),
   *rev'd,* 501 U.S. 663 (1991) ..............................................13, 16

*College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.,*
   527 U.S. 666, 680-682 (1999) ......................................................8, 10

*Curtis Publishing Co. v. Butts,*
   388 U.S. 130, 145 (1967)...........................................................*passim*

*Davies v. Grossmont Union High School Dist.,*
   930 F.2d 1390, 1396 (9th Cir. 1991) .........................................10, 16, 17

*D.H. Overmyer Co. v. Frick Co.,*
   405 U.S. 174, 185-86 (1972) ......................................................12, 16

*Edmonson v. Leesville Concrete Co.,*
   500 U.S. 614, 620 (1991)..........................................................21

*Erie Telecom., Inc. v. City of Erie,*
   853 F.2d 1084, 1094 (3rd Cir. 1988) .........................................11, 12

1

## <u>TABLE OF AUTHORITIES (Cont.)</u>

2

<u>PAGE</u>

3

<u>Cases</u>

4

*Farrell v. Int'l Ass'n of Firefighters, Local 55,*
5
    781 F. Supp. 647, 649 (N.D. Cal. 1992)....................................................7

6

*Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992)………………………...6
7

*Flint v. Dennison,*
8
    488 F.3d 816, 825 (9th Cir. 2007) ....................................................19
9

*Fuentes v. Shevin,*
10
407 U.S. 67, 95 (1972)................................................................12, 16, 21
11

*Gete v. INS,*
12
    121 F.3d 1285, 1293-94 (9th Cir. 1997).........................................10, 11, 15
13

*Int'l Ass'n of Machinists Dist. Ten v. Allen,*
14
    904 F.3d 490, 492 (7th Cir. 2018) ....................................................24
15

*Jackson v. Galan*, 868 F.2d 165. 168 (5th Cir. 1989)…………………………..21
16

*Janus v. AFSCME Counsel 31,*
17
    138 S. CT. 2448, 2486 (2018) ....................................................*passim*
18

*Johnson v. Zerbst,*
19
    304 U.S. 458, 464 (1938)..........................................................8, 10, 15
20

*Kennerly v. United States,*
21
    721 F.2d 1252, 1257-1258 (9th Cir. 1983).......................................21
22

*Kirkpatrick v. Chappell,*
23
    872 F.3d 1047, 1056 (9th Cir. 2017) ...........................................11, 15
24

*Kirtley v. Rainey,*
25
    326 F.3d 1094-95 (9th Cir. 2003).................................................23
26

*Knox v. SEIU Local 100,*
27
    567 U.S. 298, 312-313 (2012) ....................................................8, 18
28

1

## <u>TABLE OF AUTHORITIES (Cont.)</u>

2

<u>PAGE</u>

3    <u>Cases</u>

4

*Leonard v. Clark,*
5        12 F.3d 885, 889 (9th Cir. 1993) .................................................10, 12, 14, 16, 17

6
*Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967)………………………………………...6
7

8    *Lugar v. Edmondson Oil Co.,*
        457 U.S. 922, 941 (1982).......................................................................20, 21, 23
9

10   *Manhattan Community Access Corporation v. Halleck,*
        139 S. Ct. 1921 (2019).......................................................................19
11

12   *Moran v. Burbine,*
        475 U.S. 412, 421 (1986)..................................................................11, 15
13

14   *NLRB v. U.S. Postal Service,*
        827 F.2d 548, 554 (9th Cir. 1987) .......................................................24
15

16   *Ohno v. Yasuma,*
        723 F.3d 984, 996 (9th Cir. 2013) ....................................................19, 22
17

18   *Quirarte v. United Domestic Workers AFSCME Local 3930,*
        2020 WL 619574 (S.D. Cal. 2020)......................................................22
19

20   *San Mateo Union High Sch. Dist. v. Educ. Testing Servs.,*
        2013 WL 4711611 at *14 (N.D. Cal. 2013) ...........................................20
21

22   *Smith v. United Transp. Union Local No. 81,*
        594 F. Supp. 96, 99 (S.D. Cal. 1984)....................................................1
23

24   *Sniadach v. Family Fin. Corp.,*
        395 U.S. 337 (1969)........................................................................21
25

26   *Somers v. Apple, Inc.*
        729 F.3d 953, 9590-60 (9th Cir. 2013) .................................................4

27

28

vi

1

## <u>TABLE OF AUTHORITIES (Cont.)</u>

2

<u>PAGE</u>

3
<u>Cases</u>

4
*Torbert v. County of San Diego,*
5
   2012 WL 3628674 at \*5 (S.D. Cal. 2012)..........................................15

6
*Town of Newton v. Rumery,*
7
   480 U.S. 386, 392 (1987)..............................................................10, 17

8
*Travelers Cas. & Sur. Co. of Am. v. Highland P'ship, Inc.*,
9
   2013 U.S. Dist. LEXIS 32798 \*1 (S.D. Cal. 2013)………….…………...…11

10
*Tsao v. Desert Palace, Inc.,*
11
   698 F.3d 1128, 1140 (9th Cir. 2012) ........................................19, 20

12
*United States v. Fort,*
13
   472 F.3d 1106, 1120 (9th Cir. 2007) ..................................................15

14
*Villa v. Maricopa Cty.,*
15
   865 F.3d 1224, 1228-29 (9th Cir. 2017)..............................................3

16
*Walls v. Cent. Contra Costa Transit Auth.,*
17
   653 F.3d 963, 969 (9th Cir. 2011) .....................................................16

18
<u>U.S. CONST.</u>

19
20
   Amend. 1................................................................................*passim*

21
<u>STATUTES</u>

22
Cal. Gov't. Code § 1157.12(a) ..............................................................21

23

24
<u>OTHER AUTHORITIES</u>

25
Fed. R. Civ. P. 12(b)(6)........................................................................3,4

26
UPTE, *TX-Article 28- Payroll Deductions,* http://www.upte.org/contract-tx/tx
27
 _2019/28_2019.pdf (February 12, 2020)..............................................22

28

## I. Introduction

The Supreme Court in *Janus v. AFSCME Council 31,* 138 S. Ct. 2448, 2486 (2018), held that public employees have a First Amendment right not to subsidize union speech and that, consequently, the government cannot deduct payments for union speech from employees' wages without proof the employees waived that right. *Id*. Here, UPTE and Napolitano violated Labarrere's and Doroudi's First Amendment rights under *Janus* by seizing union dues from Pablo Labarrere's ("Labarrere") and Sam Doroudi's ("Doroudi") wages, and that of other similarly situated employees, without proof of a knowing and voluntary waiver of their constitutional right not to subsidize union speech.[1]

Labarrere and Doroudi are employed by UC San Diego Health, the academic health system of University of California San Diego, which is an arm of the State of California. They are subject to the exclusive representation of University Professional and Technical Employees, CWA 9119 ("UPTE"). Acting pursuant to the collective

_____

[1] Napolitano strangely argues that Labarrere's and Doroudi's allegations do not involve constitutional rights. Napolitano's Mem. In Support. pg. 12-15. As such, Napolitano contends that the allegations here fall within the purview of the Higher Education Employer-Employee Relations Act ("HEERA") and under the exclusive jurisdiction of the California Public Employment Relations Board ("PERB"). *Id.* But contrary to Napolitano's bizarre claim, Labarrere's and Doroudi's efforts to vindicate their First Amendment right of not having to subsidize a union, as recognized by the Supreme Court in *Janus*, are squarely at the heart of this case. *See* FAC ¶¶ 1, 5, 7, 18, 32, 38, 48, 49, 50, 52, 53, 54, 55. "Moreover, it is well settled that the law does not require a plaintiff to exhaust alternative remedies before bringing suit under § 1983." *Smith v. United Transp. Union Local No. 81*, 594 F.Supp. 96, 99 (S.D. Cal. 1984) (internal citations omitted).

bargaining agreement ("CBA") between Napolitano[2] and UPTE, Napolitano deducts or deducted dues for UPTE from the wages of Labarrere, Doroudi, and other employees who sign a dues deduction form. The form states in relevant part that:

> I direct UC to deduct membership dues from my monthly pay, and to transfer that money to UPTE…[i]f I resign or have resigned my union membership and the law no longer requires nonmembers to pay a fair share fee, I nevertheless agree voluntarily to contribute my fair share by paying a service fee in an amount equal to dues. I understand that this voluntary service fee authorization shall renew each year on the anniversary of the date I sign below, unless I mail a signed revocation letter to UPTE's central office, postmarked between 75 days and 45 days before such annual renewal date.

First Amended Complaint ("FAC") ¶ 21.

The Supreme Court in *Janus* held that governments could not deduct fees or other union payments from employees' wages without their affirmative consent. 138 S.Ct. at 2486. The Court further held that this consent must amount to a knowing and voluntary constitutional waiver, because "[b]y agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed." *Id.* "To be effective, the waiver must be freely given and shown by 'clear and compelling' evidence." *Id.* (quoting *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 145 (1967)). The dues deduction form here does not contain any language informing potential signatories that: (1) they have a First Amendment right not to subsidize the union and its speech, and (2) by signing the forms, they are waiving their First Amendment right not to subsidize UPTE and its speech.

---

[2] While the University of California is the party to the collective bargaining agreement with UPTE, it is being referred to here as "Napolitano."

2

Labarrere and Doroudi sent separate letters to UPTE on December 6 and December 21, 2019, respectively, resigning their union membership and revoking any previous authorization for the deduction of dues. UPTE responded by denying their requests. Napolitano and UPTE continued deducting and collecting union dues or equivalent forced fees from Labarrere's and Doroudi's wages after their membership resignation and over their objections and clear statements of nonconsent to deductions. On March 10, 2020, Labarrere and Doroudi filed suit against Napolitano and UPTE for violating their First Amendment rights and the rights of two putative classes of similarly situated employees.[3] Napolitano and UPTE continued deducting and collecting money from Labarrere's and Doroudi's wages all the way through June 2020, and have yet to reimburse them for the money collected since their revocation notices of December 2019.

## II.    Standard of Review

### a.  Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)

UPTE and Napolitano move to dismiss under Federal Rule of Civil Procedure 12(b)(6) (Dkts. 30 & 31). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Villa v. Maricopa Cty.*, 865 F.3d 1224, 1228-29

---

[3] The Classes include a "Full Dues Class" of employees subject to the revocation policy contained in the dues deduction authorization form and a "Revocation Class" of employees who resigned their UPTE membership and objected to subsidizing UPTE, but money continued to be seized from their wages. FAC pg. 8-12.

(9th Cir. 2017). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, which rise above the mere conceivability or possibility of unlawful conduct. *Iqbal*, 556 U.S. at 678-79; *Somers v. Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013).

A complaint may not be dismissed for failure to state a claim where the allegations plausibly show that the pleader is entitled to relief. *See Bell Atlantic v. Twombly,* 127 S. Ct. 1955, 1965 (2007). Affirmative defenses, such as waiver, do not warrant dismissal of a complaint pursuant to Rule 12(b)(6) except in "rare cases" *See Allbirds, Inc. v. Giesswein Walkwaren AG*, 2020 WL 1914779 at *2 (N.D. Cal. 2020) (citing *Albino v. Vaca*, 747 F.3d 1162, 1169 (9th Cir. 2014)). In ruling on a motion pursuant to Rule 12(b)(6), a court must construe the pleadings in the light most favorable to the plaintiff, and must accept as true all material allegations in the complaint, as well as any reasonable inferences to be drawn therefrom. *See Broam v. Bogan,* 320 F.3d 1023, 1028 (9th Cir. 2003); *see also Chang v. Chen,* 80 F.3d 1293 (9th Cir. 1996).

### b. Motion to Dismiss for Lack of Subject Matter Jurisdiction under Federal Rule of Civil Procedure 12(b)(1)

UPTE and Napolitano also invoke Federal Rule of Civil Procedure 12(b)(1) in their respective motions (Dkts. 30 & 31). In ruling on such jurisdictional motions involving factual issues which also go to the merits, the trial court should employ the

4

standard applicable to a motion for summary judgment, as a resolution of the jurisdictional facts is akin to a decision on the merits. Therefore, the moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Unless that standard is met, the jurisdictional facts must be determined at trial by the trier of fact. *Augustine v. United States, 704 F.2d 1074, 1077* (9th Cir. 1983) (internal citations omitted). When jurisdictional and substantive issues are so intertwined that the question of jurisdiction is dependent on the merits, it is "both proper and necessary for the trial court first to resolve the merits of the claim" to determine its own jurisdiction. *City of Santa Monica v. United States*, 650 Fed. Appx. 326, 327 (9th Cir. 2016) (internal citations omitted).

### III. UPTE and Napolitano Violate the First Amendment by Deducting and Collecting Union Dues from Bargaining Unit Members Without Any Evidence of a First Amendment Waiver.

#### a. Extracting Dues Without Any Evidence of a First Amendment Waiver Violates the First Amendment.

The crux of this case is that the dues deduction authorization form does not contain the necessary waiver of the First Amendment right not to subsidize a union, as mandated by *Janus*, irrespective of whether Labarrere and Doroudi signed it.

Labarrere and Doroudi signed the dues deduction authorization form during a mandatory orientation session at the express instructions of UPTE personnel, who conveyed to them that it was a requirement to complete the form and to subsidize the union regardless of union membership. FAC ¶ 17. This is evidenced by the dues

5

deduction authorization form itself, which blatantly misstates the current state of law surrounding union deductions. Yet UPTE suggests that its representatives would never engage in willful deception by misrepresenting the current state of the law regarding forced union deductions. UPTE's Mot. Dismiss pg. 10. Except the terms of the dues deduction authorization form at hand shows otherwise.

The form's wording makes employees agree that if they resign their union membership "and *the law no longer requires* nonmembers to pay a fair share fee", they nevertheless pledge to subsidize UPTE in an amount equal to dues (Dkt. 29-5, pg. 2, 3) (emphasis added). These terms portraying a possible future change in the law, presented to Labarrere and Doroudi more than *fourteen months* after the Supreme Court's decision in *Janus*, conveyed the false and misleading notion that the law still required nonmembers to subsidize the union, which directly contradicts *Janus*.[4] As a result of this deceitful language, and for other reasons, Labarrere and Doroudi were misled into

_____

[4] UPTE improvidently invites the Court to "compare" some allegations made by Labarrere and Doroudi in their original complaint with ones in their First Amended Complaint ("FAC"). It does so in an attempt to argue that Labarrere and Doroudi somehow affirmatively consented to dues deductions. UPTE's Mot. Dismiss pg. 8, 9. Unfortunately for UPTE, the original complaint cannot be considered because the FAC superseded it as the new operative pleading. Once amended, an original complaint no longer performs any function and is "treated thereafter as non-existent." *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) (citing *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967)). The Court must, therefore, reject UPTE's inappropriate invitation. Napolitano also makes the same unfortunate invitation to "compare" by citing the original complaint in an effort to advance a different argument. Napolitano's Mem. In Support. pg. 5. The Court must likewise decline this invitation. Notwithstanding this, UPTE's and Napolitano's arguments are meritless because there are no inconsistencies between the original complaint and the First Amended Complaint.

believing that it was a condition of employment to either join the union as full members or pay forced dues-equivalent fees as nonmembers— in September of 2019.[5] Here, the form presented Labarrere and Doroudi with the false choice of joining UPTE as dues-paying members or subsidizing the union for the same amount as nonmembers. There is nothing voluntary about choosing the former when the alternative to so doing was illegal. UPTE and Napolitano have yet to explain why employees like Labarrere and Doroudi were presented with this deceptive language even "*after* the *Janus* decision issued in 2018." UPTE's Mot. Dismiss pg. 10.

Turning to the issue affecting Plaintiffs and members of the two classes, the Supreme Court held that the First Amendment guarantees public employees a right to refrain from subsidizing a union and its speech, 138 S.Ct. at 2494, and that Illinois' fee deductions violated that right, *Id*. at 2486. The Court further issued the following rule to govern future government deductions from public employees' wages:

> Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. By agreeing to

---

[5] UPTE quotes *Farrell v. Int'l Ass'n of Firefighters, Local 55*, 781 F.Supp. 647, 649 (N.D. Cal. 1992) to argue that a plaintiff's personal understanding or belief that union membership is a condition of employment is not enough to find a union at fault. UPTE's Mot. Dismiss pg. 10, 11. The union in *Farrell*, however, had published a memorandum clearly setting out the option to refuse union membership. *Farrell*, 781 F.Supp. at 649. The court in that case, therefore, concluded that the employees were made aware of the option of not becoming union members. *Id.* Unlike in *Farrell*, UPTE's representatives did not inform Labarrere and Doroudi that they had the choice not involving subsidizing the union. Further, the dues deduction authorization form provided no leeway for employees who did not wish to give any money to the union.

pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); see also [*Knox v. SEIU Local 100*, 567 U.S. 298, 312–313 (2012)]. Rather, to be effective, the waiver must be freely given and shown by "clear and compelling" evidence. *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 145 (1967) (plurality opinion); see also *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd*., 527 U.S. 666, 680–682 (1999). Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.

138 S.Ct. at 2486.

In other words, the Court held that the government needs proof that employees who may have consented to dues deductions also knowingly and voluntarily waived their First Amendment right to refrain from subsidizing union speech before any deductions may take place. The logic of the Supreme Court's waiver requirement compels the conclusion that it applies to all employees, whether they have signed a dues authorization form or not. Since the Court held that public employees have a First Amendment right not to subsidize a union's speech, it follows that employees must waive that right before the government can take their money to subsidize union speech. *Id*. at 2464. And without a waiver, the state action of deducting dues is unconstitutional, irrespective union membership status or a signature on a dues deduction authorization form that lacks the necessary waiver language.

The contrary proposition that a constitutional standard governs state deductions of dues from nonmembers but not members —a constitutional waiver being required for the former, but only a contract of membership for the latter— defies the logic of *Janus*. The state action is deducting union dues is the same for members and nonmembers alike.

Limiting *Janus* to nonmembers would also lead to an absurd result: the need for any constitutional waiver could be obviated merely by including union membership terms on a dues deduction authorization form.[6] There is no reason why adding membership language to a dues deduction form should eliminate the need for a First Amendment waiver under *Janus*. That is especially true here, given that the deduction form authorizes deductions even when an employee has "resigned…union membership." FAC ¶ 21.

In its motion, UPTE argues that it can lawfully prohibit employees from exercising their First Amendment rights under *Janus* for 335 days a year. UPTE alleges it can do so because: (1) a mere contract, and not a constitutional waiver, is needed to show that employees consented to this restriction on their First Amendment rights; and (2) employees contractually consented to the restriction by signing a form stating that the dues deduction authorization "shall renew each year" unless revoked during an annual

---

[6] UPTE argues that *Janus* does not apply to this case because Labarrere and Doroudi, unlike the plaintiff in *Janus*, were members of the union. UPTE's Mot. Dismiss pg. 12-13. But this argument is factually incorrect. Even assuming *arguendo* that *Janus* only applies to nonmembers, it is important to note that Labarrere and Doroudi were *not* UPTE members at the time they signed the dues deduction authorization form in September 2019. Under UPTE's own interpretation that *Janus* only applies to nonmembers, UPTE *still* had to secure proof of a valid waiver of constitutional rights from these nonmembers, or the deductions are illegal. UPTE has yet to provide an explanation as to why it did not apply this waiver requirement to Labarrere and Doroudi, who at the time were *not* members of UPTE. That they eventually became union members, does not change the fact that at the time they were considering and signing the membership/deduction authorization form they were *nonmembers* entitled to all *Janus* protections.

30-day escape period, even though such restriction only applies to forced nonmember fees and not to union dues (Dkt. 29-5 pg. 2, 3). Each contention is untenable.

**b. To Establish a Valid First Amendment Waiver, It Must Be Proven by Clear and Convincing Evidence That the Purported Waiver Was Knowing, Voluntary, and Intelligently Made and Is Not Against Public Policy.**

The Ninth Circuit Court of Appeals has twice held that "First Amendment rights may be waived upon clear and convincing evidence that the waiver is knowing, voluntary and intelligent." *Leonard v. Clark*, 12 F.3d 885, 889 (9th Cir. 1993); *see Davies v. Grossmont Union High School Dist.*, 930 F.2d 1390, 1396 (9th Cir. 1991). Even where these prerequisites are satisfied, a waiver is unenforceable "'if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement.'" *Leonard,* 12 F.3d at 890 (quoting *Davies*, 930 F.2d at 1396, quoting, in turn, *Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987)).

The knowing-voluntary-intelligent standard the Ninth Circuit uses for First Amendment waivers is the same used to evaluate putative waivers of other fundamental constitutional rights. *See Gete v. INS*, 121 F.3d 1285, 1293-94 (9th Cir. 1997). Waiver-standard "principles apply equally to criminal and to civil cases." *Id*. at 1293. *Janus* itself cites three cases using similar formulations to evaluate waivers of constitutional rights. *Id*. at 2486 (citing to *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 145 (1967)); *College Savings Bank*, 527 U.S. 666, 680–82 (1999)).

The knowing-voluntary-intelligent standard for proving a waiver is a stringent one. A "waiver cannot be presumed," but "must be freely given and shown by 'clear and compelling' evidence." *Janus*, 138 S. Ct. at 2486 (quoting *Curtis Publishing*, 388 U.S. at 145). Stated conversely, "courts indulge every reasonable presumption against waiver." *Gete*, 121 F.3d at 1293 (quoting *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937)). "[T]he burden of proving the validity of a waiver of constitutional rights is always on the *government*.'" *Kirkpatrick v. Chappell*, 872 F.3d 1047, 1056 (9th Cir. 2017) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)); *See also Travelers Cas. & Sur. Co. of Am. v. Highland P'ship, Inc.*, 2013 U.S. Dist. LEXIS 32798 *8 (S.D. Cal. 2013) (internal citations omitted) (applying four factors to determine whether a waiver was valid and placing the burden of proof on the party asserting the waiver: whether there was a gross disparity in bargaining power between the parties, the business or professional experience of the party opposing the waiver, whether the opposing party had an opportunity to negotiate contract terms, and whether the clause containing the waiver was conspicuous). Neither UPTE nor Napolitano make any effort to meet the factors in *Travelers*. A waiver is not presumed lightly. That a document is a contract under state law does not prove a constitutional waiver. *See Erie Telecom., Inc. v. City of Erie*, 853 F.2d 1084, 1094 (3d Cir. 1988). The criterion for a waiver is far higher and is controlled by federal law, not state law. *Id*.

UPTE cites *Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991) to argue that no waiver analysis is required if there is a contract.[7] UPTE's Mot. Dismiss pg. 3, 15. In reality, however, the Supreme Court and other courts have repeatedly applied a waiver analysis to contracts. *See, e.g.*, *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185–86, (1972); *Fuentes v. Shevin*, 407 U.S. 67, 95 (1972); *Leonard v. Clark*, 12 F.3d 885, 889 (9th Cir. 1993); *Erie Telecom., Inc. v. City of Erie*, 853 F.2d 1084, 1094 (3rd Cir. 1988). *Cohen* is also distinguishable from instant matter in several aspects.

First, a waiver analysis was not conducted in *Cohen* because the underlying conduct did not violate the First Amendment.[8] Specifically, *Cohen* found that enforcing a promissory estoppel law against a newspaper for breach of a confidentiality agreement did not violate the newspaper's First Amendment rights because it was "a law of general applicability." 501 U.S. at 669-70. The Court did not need to determine whether the newspaper waived its First Amendment rights because that state action *did not violate*

---

[7] UPTE cites *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1200 (9th Cir. 2002) to argue that no waiver is needed here because there is a contract. UPTE's Mot. Dismiss pg. 15. But *Ahmed* is clearly distinguishable since that case dealt with an employee that was given a "meaningful opportunity" to opt-out of his employer's arbitration program by mailing in an opt-out form. 283 F.3d at 1199. After neglecting to do so during a prescribed period, the individual was automatically enrolled in the program. *Id.* Unlike in *Ahmed*, Labarrere and Doroudi were never given a meaningful opportunity to opt-out from financially supporting UPTE. The false choice between paying either nonmember forced fees or full union dues is a far cry from the "meaningful" opt-out opportunity in *Ahmed*. Moreover, UPTE and Napolitano disregarded Labarrere's and Doroudi's actual opt-out notices when they were sent in December 2019, and continued to deduct dues for an additional seven months thereafter.

[8] Waiver, as an affirmative defense, does not warrant dismissal at the motion to dismiss stage. UPTE's Mot. Dismiss pg. 14; *Allbirds, Inc.*, 2020 WL 1914779 at *2.

12

*those rights in the first place.*[9] Unlike in *Cohen*, it is beyond dispute that nonconsensual dues seizures violate dissenting employees' First Amendment rights *unless* Defendants can prove those employees waived their rights.

Second, the lack of waiver analysis in *Cohen* was due, at least in part, to the Court's finding that any burden on the First Amendment was "self-imposed" by a voluntary confidentiality promise. 501 U.S. at 671; *See also Id.* at 677 (Souter, J., dissenting) (criticizing the majority for failing to conduct a waiver analysis). The newspaper self-imposed a First Amendment restriction on publication after the parties themselves freely determined the scope of their legal obligations when negotiating a confidentiality agreement. *Id.* at 671. Because of this self-imposed restriction on free speech, the Court reasoned that the newspaper had voluntarily given up its First Amendment right to publish certain information. Unlike in *Cohen*, however, Labarrere and Doroudi had no part in the drafting or negotiation of the dues deduction form. Instead, they were presented with the Hobson's choice of subsidizing the union with either full member dues or nonmember forced fees. It would be nonsensical to argue that Labarrere and Doroudi "self-imposed" on themselves an obligation to subsidize the union. This oppressive obligation was imposed on them against their will.

---

[9] The court of appeals, which found a violation and thus reached that question, held the newspaper waived its First Amendment rights in the confidentiality agreement. *Cohen v. Cowles Media Co.*, 445 N.W.2d 248, 258 (Minn. Ct. App. 1989), *aff'd in part, rev'd in part*, 457 N.W.2d 199 (Minn. 1990), *rev'd*, 501 U.S. 663 (1991).

Employees who do not wish to financially support a union cannot be forced to pay fees or dues. *Asociación Puertorriqueña de Profesores Universitarios v. Estado Libre Asociado y Otros*, 2019 WL 2185047 (P.R. App. 2019).[10] Citing *Janus*, the Appellate Court of the Territory of Puerto Rico held that "unions, organizations, or similar associations, cannot impose any fees or dues whatsoever on public employees, unless they have the express, affirmative and contemporary consent of such employees". *Id.* When it comes to the necessary waiver analysis, this Court should also examine the Ninth Circuit's decision in *Leonard*. That case concerned whether a city could enforce a term of a union collective bargaining agreement in which the union agreed to restrictions on its First Amendment right to petition the government. 12 F.3d at 886-87. This Court held that the restriction was enforceable only if the city could prove, by clear and convincing evidence, a knowing, voluntary, and intelligent waiver of First Amendment rights and that public policy supports enforcing that waiver. *Id*. at 889-91. The same waiver analysis is required here.

### c. Neither UPTE nor Napolitano Can Prove That Labarrere and Doroudi "Knowingly" or "Intelligently" Waived Their First Amendment Right Not to Subsidize UPTE.

It is no surprise that UPTE and Napolitano cannot satisfy their heavy burden of proving that Plaintiffs knowingly and intelligently waived their First Amendment right not to subsidize UPTE's speech because nothing on the dues deduction form (1) notifies

_____

[10]    The original ruling was written in the Spanish language. An English translation prepared by a court-certified interpreter is hereby attached as an addendum.

employees of their First Amendment rights, or (2) states that employees are waiving those rights. Without the former, a "knowing" or "intelligent" waiver cannot be proven. These criteria require proof of "'a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Kirkpatrick*, 872 F.3d at 1055 (quoting *Moran*, 475 U.S. at 421). Put another way, there must be an "intentional relinquishment or abandonment of a known right or privilege." *Johnson*, 304 U.S. at 464. *See also Torbert v. County of San Diego*, 2012 WL 3628674 at *5 (S.D. Cal. 2012) (quoting *United States v. Fort*, 472 F.3d 1106, 1120 (9th Cir. 2007)).

Of course, UPTE and Napolitano cannot prove that Labarrere and Doroudi were fully aware of their First Amendment rights under *Janus* when nothing on the form notifies them of their rights.[11] *See Gete*, 121 F.3d at 1294 (no waiver because plaintiffs did not "receive [ ] any notice whatsoever that they were waiving their right to challenge the lawfulness of the process itself, let alone all of their rights under the first ten amendments to the Constitution."). Without such language, the form cannot amount to "'clear and compelling' evidence" of a waiver. *Janus*, 138 S. Ct. at 2486 (quoting *Curtis Publishing*, 388 U.S. at 145). A court "need not concern [itself] with the involuntariness

---

[11] UPTE also suggests that the language in the dues deduction authorization proves that Labarrere and Doroudi consented to abide by the restriction on stopping deductions. UPTE's Mot. Dismiss pg. 7, 8. Such language, however, does not provide "a full awareness of both the nature of the [constitutional] right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). To the extent that employees even noticed this language in the fine print, few if any would conclude that it restricts First Amendment rights, which are not even mentioned.

or unintelligence of a waiver when the contractual language relied upon does not, on its face, even amount to a waiver." *Fuentes*, 407 U.S. at 95; *see Walls v. Cent. Contra Costa Transit Auth.*, 653 F.3d 963, 969 (9th Cir. 2011) (per curiam) (holding public employee did not knowingly waive due process rights because the agreement "contains no express waiver of a pre-termination hearing or of the right to due process").

The controversy here parallels that in *Fuentes*, wherein the Supreme Court held that prejudgment replevin terms of a sales contract did not establish a valid due process waiver because the terms were not clearly stated and "[t]here was no bargaining over contractual terms between the parties who, in any event, were far from equal in bargaining power." 407 U.S. at 92. By contrast, the situation here is unlike those in which parties negotiated the agreement at issue and intelligently agreed to waive known rights. *See, e.g., D.H. Overmyer*, 405 U.S. at 185–86 (finding a waiver in a contract negotiated between two corporations because it "was not a contract of adhesion" and "not a case of unequal bargaining power or overreaching"); *Leonard*, 12 F.3d at 890 (finding a First Amendment waiver because the union proposed the waiver and it "resulted from the give-and-take of negotiations between parties of relatively equal bargaining strength"); *Davies*, 930 F.2d at 1395 (finding a waiver to be knowing because the plaintiff "was represented by counsel during settlement negotiations" and agreement "stated that he had been advised of the consequences of its terms and knowingly entered into the agreement."); *Cohen*, 445 N.W.2d at 258 (finding a knowing waiver because a contract was negotiated by experienced reporters and political operatives).

It is clear that Labarrere and Doroudi did not negotiate the terms of the dues deduction form with Napolitano nor UPTE. Labarrere and Doroudi were not informed of their First Amendment right not to subsidize UPTE's speech when they signed that form and nothing on it even states that the signatory agrees to waive that right. The dues deduction form here comes nowhere close to constituting clear and compelling proof that employees knowingly or intelligent waived their First Amendment rights. UPTE and Napolitano have failed to meet their burden of proving that, by completing the form, Labarrere and Doroudi waived their First Amendment right to refrain from subsidizing UPTE and its speech. The defendants have pointed to nothing proving Plaintiffs knew of their First Amendment rights under *Janus* when signing the dues deduction form. And that should be the end of the matter: there is no proof of a *knowing* waiver.

**IV. The Revocation Restriction Is Unenforceable Against Public Policy.**

Even if there were a proper constitutional waiver, which there is not, the waiver would be unenforceable because the revocation restriction here is against public policy. A waiver is enforceable only "'if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement.'" *Leonard*, 12 F.3d at 890 (quoting *Davies*, 930 F.2d at 1396, quoting, in turn, *Rumery*, 480 U.S. at 392). The policy weighing against enforcement of the revocation policy is of the highest order: Employees' First Amendment right not to subsidize speech they do not wish to support. "Compelling individuals to mouth support for views they find objectionable violates . . . [a] cardinal constitutional command." *Janus*, 138 S. Ct. at 2463.

"[C]ompelling a person to subsidize the speech of other private speakers raises similar First Amendment concerns." *Id*. at 2464. "As Jefferson famously put it, 'to compel a man to furnish contributions of money for the propagation of opinions which he disbelieves and abhor[s] is sinful and tyrannical.'" *Id*. The revocation policy compels employees to contribute money to propagate UPTE advocacy that the individual does not wish —or no longer wishes— to support.

There is no countervailing interest in prohibiting employees from exercising their First Amendment rights under *Janus* for 335-336 days of each year. This policy exists for the illegitimate purpose of impeding employees' right not to subsidize UPTE's speech. UPTE alludes to its interest of maintaining "financial stability" as a way of justifying the revocation restriction scheme. UPTE's Mot. Dismiss pg. 9. But a union's pecuniary self-interest does not outweigh employees' First Amendment rights. *See Knox v. SEIU, Local 1000*, 567 U.S. 298, 321 (2012) (a union's interest in collecting fees to which it arguably was entitled did not outweigh employees' interests in not paying those fees because only employees, and not a union, have constitutional interests at stake).

**V. This Case Involves an Overwhelming Degree of State Action.**

UPTE and Napolitano argue there is no state action in this matter and, as such, no constitutional scrutiny is required. UPTE's Mot. Dismiss pg. 16; Napolitano's Mem. In Support pg. 3-7. The source of state action in this case is Napolitano's deduction of monies from employees' wages in support of UPTE, which violates their First Amendment right not to subsidize the union. That harm, which was found in *Janus*, is the

result of state action. And Napolitano is certainly a state actor.[12] The Ninth Circuit has long held that a state university is an arm of the state. *See Flint v. Dennison,* 488 F.3d 816, 825 (9th Cir 2007) (citing *Armstrong v. Meyers*, 964 F.2d 948, 949-950 (9th Cir. 1992)). UPTE is also a state actor because it acts jointly with Napolitano, a state arm, to extract dues from employees. Joint action exists where "state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Ohno v. Yasuma*, 723 F.3d 984, 996 (9th Cir. 2013) (quoting *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012)). Joint action exists where "state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Ohno* 723 F.3d at 996 (quoting *Tsao.*, 698 F.3d at 1140). That is what Napolitano and UPTE have done here.

UPTE works in close coordination with Napolitano to divert to its coffers money deducted from employees' wages. In so doing, it has interfered with Labarrere's and Doroudi's constitutional rights in a sweeping and systematic fashion. By carefully

---

[12] This matter is distinguishable from *Manhattan Community Access Corporation v. Halleck*, 139 S.Ct. 1921 (2019). In that case, the state action analysis was limited to determining if a private corporation exercised a traditional or exclusive public function by operating public access television channels. *Id.* at 1926. The Court reasoned that providing a forum for speech is not an activity that only governmental entities have traditionally performed. *Id.* at 1930. Here, however, Labarrere and Doroudi are not arguing that any of the defendants is performing a public function traditionally belonging to government. Rather, a finding of state action can be made after conducting a joint action, government compulsion or governmental nexus tests. The ruling in *Halleck* also does nothing to alter long-standing Ninth Circuit precedent regarding California public universities being arms of the state. *See* discussion and cases cited in text.

coordinating with an arm of the state, UPTE is a willing participant in the deduction and collection scheme of union dues from public employees. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982). By freely entering into this CBA, UPTE has placed itself in a position of interdependence and collaboration with Napolitano. Without the CBA and Napolitano's payroll deductions, no money would have been deducted from Labarrere's and Doroudi's wages and transmitted to UPTE. Joint action developed as soon as UPTE insinuated itself into a position of interdependence with an arm of the State of California and must now be recognized as a joint participant in the extraction of money from employees' wages. *See San Mateo Union High Sch. Dist. v. Educ. Testing Servs.*, 2013 WL 4711611 at *14 (N.D. Cal. 2013) (citing *Tsao v. Desert Place, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012)). The Supreme Court has "consistently held that a private party's joint participation with state officials in the seizure of disputed property is sufficient to characterize that party as a 'state actor' for purposes of the Fourteenth Amendment." *Lugar*, 457 U.S. at 941. This joint action is more than enough to establish that UPTE is a state actor under color of state law.

### a. Napolitano and UPTE Triggered State Action by Agreeing to Deduct and Collect Money from Employees' Wages.

The test for state action is "first whether the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority . . . and second, whether the private party charged with the deprivation could be described in

all fairness as a state actor." *Edmonson v. Leesville Concrete Co*., 500 U.S. 614, 620, (1991) (citing *Lugar*, 457 U.S. at 939-42). Those criteria are easily satisfied here.

First, the constitutional deprivation here results from the Napolitano's and UPTE's extraction of money from employees' wages. These government deductions are made pursuant to Cal. Gov't Code § 1157.12(a), as well as the CBA between Napolitano and UPTE, constituting state action. The State is literally seizing money from government payments made to public employees pursuant to a state statute. *Janus* involved the same state action: government deductions of union fees from state employees' wages. 138 S. Ct. at 2486. Both the Supreme Court and the Ninth Circuit have long applied constitutional strictures to state garnishments of employees' wages. *See Sniadach v. Family Fin. Corp*., 395 U.S. 337 (1969); *Kennerly v. United States*, 721 F.2d 1252, 1257-1258 (9th Cir. 1983). Thus, trivializing this as a mere "ministerial" act is a gross mischaracterization. State officials acting pursuant to a state statute are acting under color of state law for purposes of § 1983, regardless of whether state law gave them any discretion in carrying out their duties. *Jackson v. Galan*, 868 F.2d 165. 168 (5th Cir. 1989). Outside the employment context, courts have found state action in constitutional challenges to state collection procedures. *See Lugar*, 457 U.S. at 933-34 (discussing several prior cases, including *Fuentes*, 407 U.S. at 94-95); *Cohen*, 501 U.S. at 668. Here, the dues deduction scheme is a product of state action and are unconstitutional as to those who did not waive their constitutional rights under *Janus*.

**1.  UPTE is a State Actor under the Joint Action Test.**

UPTE is a party to provisions of the CBA with Napolitano that authorize dues deductions and plays an active role in determining when Napolitano will seize dues from employees' wages, as well as the amount of those deductions.[13] As Labarrere's and Doroudi's experiences demonstrate, UPTE exercises this authority to control when Napolitano will cease dues deductions.[14] UPTE cites *Quirarte v. United Domestic Workers AFSCME Local 3930*, 2020 WL 619574 (S.D. Cal. 2020) as standing for the proposition that there is no state action to be found in this case. UPTE's Mot. Dismiss pg. 16. In *Quirarte*, however, the Court found no joint action because the plaintiffs in that case failed to show that a State Controller coordinated with a union to deduct dues from their wages. 2020 WL 619574 at *4. The instant case is distinguishable from *Quirarte* because the coordination between Napolitano and UPTE is clearly laid out in the CBA.[15] Labarrere and Doroudi have shown that "state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Id.* (*quoting Ohno*, 723 F.3d at 996). If any private party is a state actor by virtue of its "joint participation

---

[13] As per the tentative collective bargaining agreement between Napolitano and UPTE, the union "shall establish its dues amount and shall certify its amount to the University. The University shall deduct from the members' retirement gross earnings the amount certified by UPTE." UPTE, *TX-Article 28- Payroll Deductions*, http://www.upte.org/contract-tx/tx_2019/28_2019.pdf (February 12, 2020).

[14] Labarrere and Doroudi first requested the cessation of deductions on December 6 and December 21, 2019, respectively. UPTE denied their demands. FAC ¶ 19, 20.

[15] The tentative CBA even specifies that Napolitano shall "remit deductions to UPTE on a monthly basis" and "make every effort to redirect bargaining unit employees…to UPTE regarding dues related inquiries." UPTE, *TX-Article 28- Payroll Deductions*, http://www.upte.org/contract-tx/tx_2019/28_2019.pdf (February 12, 2020).

with state officials in the seizure of disputed property," *Lugar*, 457 U.S. at 941, it is a union acting in concert with a state university to seize dues from wages. That state actor is UPTE.

### 2. UPTE is a State Actor under the Governmental Nexus Test.

To find state action under the government nexus test, courts consider whether there is such a close nexus between the state and the challenged action that the seemingly private behavior may be treated as that of the State itself. *Kirtley*, 326 F.3d at 1094-95 (quoting *Brentwood v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001)). As shown, Napolitano and UPTE are intertwined with each other in their common enterprise to deduct and collect money from employees' wages. One of the many displays of this partnership occurred when UPTE took part in the mandatory orientation session in which Labarrere and Doroudi participated. FAC ¶ 17. The deductions resulting from such partnership between a public party and a private one clearly constitute behavior by a single entity: The Government. Here, the State has deducted thousands of dollars from the wages of public employees like Labarrere and Doroudi to subsidize UPTE.

### b. The Dues Deduction Authorization is Not the Source of State Action.

UPTE argues there is no state action present here because the dues deduction form supposedly is a private contractual agreement. UPTE's Mot. Dismiss pg. 17. That is irrelevant even if true, and false in any event because it is an agreement between a public employee and a public employer, not private entities.

Foremost, the dues deduction form is not the primary source of state action or of the constitutional deprivation. The state action is Napolitano's deductions of money from employees' wages for UPTE's speech no matter the basis or authorization for the deductions. That is the state action that violates employees' First Amendment right not to subsidize UPTE and its speech. The form is relevant only to the issue whether the employees validly waived their First Amendment right not to support UPTE's speech, which, as the form shows, they did not. But the form is not the source of constitutional harm. The constitutional injury is the State seizing money to subsidize union speech without an authorization containing the required waiver of First Amendment rights. That harm, the same one in *Janus*, is the undeniable result of state action.

To the extent that it does matter, the dues deduction form is a contract with Napolitano and is thus suffused with state action. A "dues-checkoff authorization is a contract between *the employer* and the employee for payroll deductions." *Int'l Ass'n of Machinists Dist. Ten v. Allen*, 904 F.3d 490, 492 (7th Cir. 2018) (emphasis added); *see Atlanta Printing Specialties v. NLRB*, 523 F.2d 783, 785 (5th Cir. 1975) (similar); *NLRB v. U.S. Postal Service*, 827 F.2d 548, 554 (9th Cir. 1987) (similar). *See also Anderson v. Serv. Employees. Int'l Union Local 503*, 2019 WL 4246688 at *3 (D. Or. Sept. 4, 2019) (applying this longstanding private-sector norm to a case involving a public-sector union). This is confirmed by the dues deduction form itself, which by its own terms, is an agreement with Napolitano. The form, after all, "direct[s] _UC_ to deduct membership dues from my monthly pay, and to transfer that money to UPTE" (Dkt. 29-5 pg. 2, 3).

(emphasis added). The language in the dues deduction form forces employees who resign their UPTE membership and become nonmembers to keep paying money "in an amount equal to dues", an irrevocable imposition except during a yearly 30-day period. *Id.*

UPTE is, at most, a third-party beneficiary to this arrangement. In order to dodge a finding of state action, however, Napolitano argues that the university had no role in drafting the dues deduction form Napolitano's Mem. In Support. pg. 6. But this too is irrelevant, even if true. While Labarrere and Doroudi make no such concession, the person responsible for actually drafting the dues deduction form is irrelevant because its authorship is not the source of the injury. What is relevant is Napolitano's role in extracting and collecting money from Labarrere and Doroudi pursuant to the signed CBA with UPTE. This Court should hold UPTE and Napolitano are state actors accountable for their constitutional violations.

## VI.   Conclusion

Wherefore, for the reasons herein explained, it is respectfully requested that the Court deny Defendants' motions to dismiss. Should the Court grant dismissal, however, it should also grant Labarrere and Doroudi leave to amend the complaint.

**RESPECTFULLY SUBMITTED.**

Dated:  September 4, 2020

/s/ Mark T. Bennett
Mark T. Bennett

Slovak Baron Empey Murphy & Pinkney LLP

Ángel J. Valencia
(*Pro Hac Vice*)
Milton L. Chappell
(*Pro Hac Vice*)

Attorneys for Plaintiffs Pablo Labarrere, Sam Doroudi, and the Classes They Seek to Represent.

**CERTIFICATE OF SERVICE**

I certify that on September 4, 2020, the aforementioned *Plaintiffs' Answering Memorandum of Points and Authorities in Support of omnibus Response in Opposition to Defendants' Motions to Dismiss the First Amended Complaint* was filed electronically in this case. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Ángel J. Valencia
ÁNGEL J. VALENCIA
*Counsel for Plaintiffs and the Proposed Classes*