Mark T. Bennett, Esq. (SBN 89061)
Stephen J. Schultz, Esq. (SBN 90187)
Slovak Baron Empey Murphy & Pinkney LLP
2240 Fifth Ave.
San Diego, CA 921011
Telephone: (619) 501-4540

Ángel J. Valencia (D.C. Bar No. 1552471) (*Pro Hac Vice*)
Milton L. Chappell (D.C. Bar No. 936153) (*Pro Hac Vice*)
c/o NATIONAL RIGHT TO WORK LEGAL DEFENSE FOUNDATION, INC.
8001 Braddock Road, Suite 600
Springfield, Virginia 22151
Telephone: (703) 321-8510

Attorneys for Plaintiffs and the Classes They Seek to Represent

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

PABLO LABARRERE, SAM DOROUDI, individually and as representatives of the requested classes,

Plaintiffs,

v.

UNIVERSITY PROFESSIONAL AND TECHNICAL EMPLOYEES (UPTE), CWA 9119; MICHAEL V. DRAKE, in his official capacity as President of the University of California.

Defendants.

Case No. 20-cv-0444-CAB-WVG

PLAINTIFFS' SUPPLEMENTAL BRIEF

Date: September 18, 2020
Courtroom: 4C
Judge: Hon. Cathy Ann Bencivengo
Trial Date: None set
Action Filed: March 10, 2020

# TABLE OF CONTENTS


**PAGE**

I. INTRODUCTION .......... 1

II. UPTE AND UC DEDUCTED NONMEMBER FEES WITHOUT PLAINTIFFS' AFFIRMATIVE CONSENT .......... 2

III. LABARRERE AND DOROUDI WERE COMPELLED TO SIGN A DUES DEDUCTION AUTHORIZATION AND MEMBERSHIP FORM .......... 6

IV. CONCLUSION .......... 8

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Belgau v. Inslee*,
2020 WL 5541390 (9th Cir. 2020) ........ *passim*

*Janus v. AFSCME Council 31*,
138 S. Ct. 2448, 2486 (2018)........ *passim*

*Ohno v. Yasuma*,
723 F.3d 984, 996 (9th Cir. 2013) ........ 6, 8

*Rawson v. Recovery Innovations*,
2020 WL 5405684 (9th Cir. 2020)........8

*Tsao v. Desert Palace, Inc.*,
698 F.3d 1128, 1140 (9th Cir. 2012) ........ 8

**U.S. CONST.**

Amend. 1........ *passim*

## I. Introduction

On September 16, 2020, the U.S. Court of Appeals for the Ninth Circuit issued its decision in *Belgau v. Inslee*, 2020 WL 5541390 (9th Cir. 2020). Defendant UPTE then filed a Notice of Supplemental Authority notifying the Court of the ruling, which it claimed was "controlling' and addresses "nearly identical claims and facts, and is therefore relevant to deciding this matter." (Dkt. 35 at 2). On September 17, 2020, this Court ordered Plaintiffs to "file a supplemental brief to explain how Plaintiffs' claims survive by September 24, 2020." (Dkt. 36). Given the distinguishable grounds explained below, however, *Belgau* does not control the instant matter.

Plaintiffs Pablo Labarrere ("Labarrere") and Sam Doroudi ("Doroudi") commenced their employment as Service Desk Analysts with UC San Diego Health in September 2019. First Amended Complaint ("FAC") ¶ 15, Dkt. No. 29 at 5. During a mandatory employer-sponsored orientation session on September 9, 2019, Labarrere and Doroudi each signed a dues deduction authorization form, containing a United Professional and Technical Employees, CWA 9119 ("UPTE") membership application allowing for the deduction and collection of membership dues from their wages. FAC ¶ 17, Dkt. No. 29 at 5; Dkt. 29-5 at 2-3. The form also contained a narrow yearly 30-day escape period for employees to revoke the authorization for union deductions. FAC ¶ 21, Dkt. No. 29 at 6; Dkt. 29-5 at 2-3. Labarrere and Doroudi sent separate letters to UPTE on December 6 and December 21, 2019, respectively, resigning their union membership and revoking any previous dues deduction authorization. FAC ¶¶ 19-20 Dkt. No. 29 at 6.

Although UPTE dropped Labarrere and Doroudi from its membership rolls, the University of California ("UC") and UPTE began deducting and collecting *nonmember forced fees* from Labarrere's and Doroudi's wages over their objections and clear manifestations of non-consent to any deductions. FAC ¶ 24, Dkt. No. 29 at 7; UPTE's Mot. Dismiss, Dkt. 30 at 4. UC and UPTE continued deducting and collecting fees from Labarrere's and Doroudi's wages all the way through June 26, 2020— the start of the annual escape period. FAC ¶ 24, Dkt. No. 29 at 7; Exh.1.[1] UC and UPTE have yet to reimburse Labarrere and Doroudi for the nonmember forced fees collected since the December 2019 revocation notices.

## II. UPTE and UC Deducted *Nonmember Fees* Without Plaintiffs' Affirmative Consent.

Like the plaintiffs in *Belgau*, Labarrere and Doroudi each signed a *dues* deduction authorization form containing a restrictive escape period for revoking such authorization. *Compare* FAC ¶ 17, Dkt. No. 29 at 5 *and* Dkt. 29-5 at 2-3 *with Belgau,* 2020 WL 5541390 at *2. After receiving revocation letters outside of the prescribed escape period, the union defendant in *Belgau* terminated the plaintiffs' union membership but continued deducting *union dues* until reaching the escape period. *Belgau*, 2020 WL 5541390 at *3.

But the instant case is different. While UPTE also terminated Labarrere's and Doroudi's union membership upon receipt of their revocation letters in December 2019,

---

[1] UPTE sent separate letters to Labarrere and Doroudi on June 26, 2020, notifying them of the cancellation of nonmember fee deductions. These two documents are hereby attached as Exhibit 1.

it started deducting a "service fee" —not *union dues*— until reaching the escape period. Dkt. 29-5 at 2-3; UPTE's Mot. Dismiss, Dkt. 30 at 4 ("… after Plaintiffs' resignation from membership", UC deducted a "service fee from Plaintiffs' pay and sent them to UPTE"); Exh. 1. In other words, the defendants in *Belgau* continued to deduct and collect *union dues* after the plaintiffs there became nonmembers and attempted to revoke their dues deduction authorization forms while UC and UPTE, on the other hand, deducted and collected *nonmember forced fees* once Labarrere and Doroudi submitted their revocation notices and UPTE accepted their resignations from union membership. Unlike *Belgau*, deductions of nonmember fees, not union dues, occured here. *See Belgau*, 2020 WL 5541390 at *5.

The Supreme Court in *Janus v. AFSCME Council 31,* 138 S. Ct. 2448, 2486 (2018), held that public employees have a First Amendment right not to subsidize union speech and that, consequently, the government cannot deduct payments for union speech from employees' wages without proof the employees waived that right. *Id*. "States and public-sector unions may no longer extract agency fees from nonconsenting employees." *Id.* That is precisely the situation we have here— that after Labarrere and Doroudi became nonmembers *fees* were deducted from their wages between December 2019 and June 2020 without their consent.

Here, UPTE and UC infringed on Labarrere's and Doroudi's First Amendment rights under *Janus* by seizing money from their wages, and that of other similarly situated employees, without their affirmative consent and proof of a knowing and voluntary

waiver of their constitutional right not to subsidize union speech. But under any construal of *Janus*, employees who are *not* members of a union cannot be forced to subsidize it through the payment of nonmember forced fees. *Id.* According to the Ninth Circuit, "*Janus* repudiated agency fees imposed on nonmembers, not union dues collected from members…". *Belgau*, 2020 WL 5541390 at *2. That same repudiation found in *Janus* and recognized in *Belgau* is required here because as in *Janus*, Defendants compelled Labarrere and Doroudi to pay nonmember fees against their express wishes.

UPTE repeatedly argues that *Janus* does not apply to this case because Labarrere and Doroudi, unlike the plaintiff in *Janus*, were members of the union. UPTE's Mot. Dismiss at 12-13. Even assuming *arguendo* that *Janus* only applies to nonmembers, the reality is that Labarrere and Doroudi ceased being UPTE members after submitting their revocation notices on December 6 and December 21, 2019, respectively, which UPTE accepted. With these revocation notices, they also made clear to UPTE their non-consent to any further deductions of any kind. FAC ¶¶ 19-20, Dkt. No. 29 at 6. But this demand fell on deaf ears.

Even with Labarrere's and Doroudi's new status as nonmembers, UC and UPTE went on to deduct and collect *fees* from their wages starting in December 2019 until their escape period was reached on June 26, 2020. Exh. 1. Even assuming *Janus* only applies to nonmembers, UPTE *still* had to secure proof of consent and a valid waiver of constitutional rights from these nonmembers, or the deductions are illegal. UPTE has yet to explan why it did not apply this waiver requirement to Labarrere and Doroudi, who

were *not* members of UPTE as of their membership resignations in December 2019, as UPTE recognized.

That Labarrere and Doroudi originally signed dues deduction authorization forms in September 2019 does not change the fact that upon resigning union membership they became *nonmembers* entitled to all *Janus* protections. Neither does it change the fact that UPTE recognized that the deductions it caused after Plaintiffs' resignations were for fees, not dues. In deducting nonmember fees by force without first securing affirmative consent to nonmember fee deductions and a valid First Amendment waiver, UPTE and UC violated Labarrere's and Doroudi's constitutional right not to be compelled to subsidize a union. *See generally* Plaintiffs' Response in Opposition, Dkt. No. 32 at 5-10. As *Belgau* recognized, *Janus* "discussed constitutional waiver because it concluded that nonmembers' First Amendment right had been infringed…" *Belgau* 2020 WL 5541390 at *8. Under any reading of *Janus*, after Labarrere and Doroudi resigned and became nonmembers, UPTE and UC were required to secure a valid waiver of constitutional rights from them before carrying out any deductions of *nonmember fees*. *See generally* Plaintiffs' Response in Opposition, Dkt. No. 32 at 5-17. Because they failed to do so, the deductions are unconstitutional. UPTE and UC are unable to justify why they deducted and collected *nonmember fees* from the wages of Labarrere and Doroudi against their express wishes, let alone any affirmative consent. As the Ninth Circuit recognized, "[t]he dangers of compelled speech animate *Janus*." *Belgau*, 2020 WL 5541390 at *7 (internal citations omitted). The dangers of compelling Labarrere and Doroudi to subsidize UPTE

after their resignation of union membership must also trigger the constitutional protections laid out in *Janus*.

**III. Labarrere and Doroudi were Compelled to Sign a Dues Deduction Authorization and Membership Form.**

The *Belgau* court dismissed the claims against the union defendant after finding no state action triggering an independent constitutional scrutiny. *See Belgau* 2020 WL 5541390 at *6. Applying the test for state action, the court stated:

> A joint action between a state and a private party may be found in two scenarios: the government either (1) "affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party," or (2) "otherwise has so far insinuated itself into a position of interdependence with the non-governmental party," that it is "recognized as a joint participant in the challenged activity.
>
> *Belgau* 2020 WL 5541390 at *8 (quoting *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 996 (9th Cir. 2013).

The court did not find state action because the state's role in that case was "neither significant nor coercive" and lacked "significant assistance" or "significant aid" from the state. *Belgau* 2020 WL 5541390 at *4 (internal citations omitted). Further, the plaintiffs in *Belgau* did not "offer a serious argument that they were coerced to sign the membership cards…" and did not argue they were required to sign "union cards." *Belgau*, 2020 WL 5541390 at *7. The Ninth Circuit described these facts as lacking "even a whiff of compulsion." *Id.* But the compulsion here is starkly different.

Labarrere and Doroudi signed the dues deduction authorization form during a mandatory orientation session for new employees on September 9, 2019. FAC ¶ 17, Dkt.

No. 29 at 5.; Exh. 2. As part of the orientation program, UC arranged for at least three UPTE representatives to speak to the new employees. Exh. 2. UPTE's representatives handed a packet of documents containing the dues deduction authorization and membership form to Labarrere and Doroudi, as well as all the other new employees present at the orientation session. *Id*. UPTE's representatives instructed them to hand over the forms with their signatures. *Id.* As new employees taking part in an employer-mandated orientation session, Labarrere and Doroudi complied with these demands and handed over the completed forms to UPTE's representatives. *Id.*

Here, UC was involved in the solicitation of union deductions by arranging the mandatory orientations. UC, as a state employer, provided a forum for UPTE to force employees into signing dues deduction authorization forms. Had it not been for UC's direction, participation and oversight during the mandatory orientation session, UPTE would not have been able to coerce employees into signing the dues deduction authorization and membership forms. *Contra Belgau* 2020 WL 5541390 at *4 (concluding that the employees signed the membership and dues agreements "without any direction, participation, or oversight" by the state employer.").

UC's role in facilitating UPTE's unconstitutional conduct clearly rises to the level of "oversight", "significant aid", "direction" and "participation" needed to trigger independent constitutional scrutiny. *See Id.* While such degree of government employer involvement was not present in *Belgau*, it is here. "[P]rivate parties may act under color of state law when the state significantly involves itself in the private parties' actions and

decision making at issue." *Rawson v. Recovery Innovations, Inc.*, 2020 WL 5405684 (9th Cir. 2020) at *8. "[T]he full factual context" of this case must be considered when making any determination regarding state action. *See Id.* at *6. The situation here is one in which "state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Ohno*, 723 F.3d at 996 (quoting *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012)). "[S]tate officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Ohno* 723 F.3d at 996 (quoting *Tsao*, 698 F.3d at 1140). That is what UC and UPTE have done here. *See generally* Plaintiffs' Response in Opposition, Dkt. No. 32 at 18-25. By overseeing UPTE's participation in the orientation session, UC actively enabled UPTE in obtaining Labarrere's and Doroudi's involuntary approval for the deduction of dues. UPTE must, therefore, be regarded as a state actor, as UC's participation in the coercion scheme was determinative.

## IV. Conclusion

Wherefore, for the reasons herein explained, it is respectfully requested that the Court take notice of the foregoing factual differences with the Ninth Circuit's decision in *Belgau* and deny UPTE's and UC's motions to dismiss. Should the Court grant dismissal, however, it should also grant Labarrere and Doroudi leave to amend the complaint.

**RESPECTFULLY SUBMITTED.**

Dated: September 24, 2020

/s/ Mark T. Bennett
Mark T. Bennett

Slovak Baron Empey Murphy & Pinkney LLP

Ángel J. Valencia
(*Pro Hac Vice*)
Milton L. Chappell
(*Pro Hac Vice*)

Attorneys for Plaintiffs Pablo Labarrere, Sam Doroudi, and the Classes They Seek to Represent.

**CERTIFICATE OF SERVICE**

I certify that on September 24, 2020, the aforementioned *Plaintiffs' Supplemental Brief* was filed electronically in this case. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Ángel J. Valencia
ÁNGEL J. VALENCIA
*Counsel for Plaintiffs and the Proposed Classes*