UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PABLO LABARRERE, SAM DOROUDI, individually and as representatives of the requested classes,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSITY PROFESSIONAL AND TECHNICAL EMPLOYEES (UPTE), CWA 9119; MICHAEL V. DRAKE, in his official capacity as President of the University of California,<br><br>Defendants. | Case No.: 20-cv-444-CAB-WVG<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**<br><br>[Doc. Nos. 30, 31] |

This matter comes before the Court on the Defendants' motions to dismiss. [Doc. Nos. 30, 31.] The motions have been fully briefed and the Court finds them suitable for determination on the papers submitted and without oral argument. *See* S.D. Cal. CivLR 7.1(d)(1). For the reasons set forth below, the motions are granted.

**I.    BACKGROUND**

Plaintiffs Pablo Labarrere and Sam Daroudi ("Plaintiffs") are University of California ("University") employees who work as Service Desk Analysts at UC San Diego

Health. [Doc. No. 29 at ¶ 2.] Defendant University Professional and Technical Employees, CWA 9119 ("UPTE") is the exclusive bargaining representative for Plaintiffs and thousands of other public sector employees in San Diego. [*Id*. at ¶¶ 3, 13.] Defendant Michael V. Drake ("Drake" or "University President") is the current President of the University of California. [Doc. No. 38 at 5[1].]

Plaintiffs allege that during a mandatory new employees' orientation session on September 9, 2019, Plaintiffs signed dues deduction authorization forms authorizing University to deduct union dues from Plaintiffs' wages following express orders of UPTE representatives directing Plaintiffs to complete and turn in the forms. [Doc. No. 29 at ¶ 17.] The dues deduction authorization forms state in relevant part:

> I apply to become a member of UPTE. I enter into this agreement in return for the privileges of UPTE membership and the long-term benefit of union representation. I direct UC to deduct membership dues from my monthly pay, and to transfer that money to UPTE. I can end my membership by following instructions in my union contract (found at www.upte-cwa.org), or as otherwise allowed by law. If I resign or have resigned my union membership and the law no longer requires nonmembers to pay a fair share fee, I nevertheless agree voluntarily to contribute my fair share by paying a service fee in an amount equal to dues. I understand that this voluntary service fee authorization shall renew each year on the anniversary of the date I sign below, unless I mail a signed revocation letter to UPTE's central office, postmarked between 75 days and 45 days before such annual renewal date.

[*Id*. at ¶ 21; Doc. No. 29-5.]

In December 2019, Plaintiffs notified UPTE seeking to resign from union membership and revoke the dues deduction and UPTE responded by denying Plaintiffs' requests. [Doc. No. 29 at ¶ 19–21.] Plaintiffs allege the Defendants did not cease deduction of dues from Plaintiffs' wages until the restrictive escape period was reached in June 2020. [*Id*. at ¶ 24.]

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

Plaintiffs filed the initial putative class action complaint on March 10, 2020, against UPTE, Janet Napolitano, in her official capacity as President of the University of California, and Xavier Becerra, in his official capacity as Attorney General of California. [Doc. No. 1.] On July 24, 2020, the parties filed a joint motion requesting all claims against Defendant Attorney General Xavier Becerra be dismissed with prejudice, and that Plaintiffs be allowed to file an Amended Complaint. [Doc. No. 27.] The Court granted the parties' joint motion that same day. [Doc. No. 28.]

On July 31, 2020, Plaintiffs filed the First Amended Complaint ("FAC") against Defendants UPTE and Janet Napolitano. [Doc. No. 29.] In August 2020, Michael V. Drake, M.D., was appointed President of the University of California, and is therefore substituted for Janet Napolitano. [Doc. No. 38 at 5, fn. 1.] The FAC alleges: (1) a violation of Plaintiffs' First and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983 for deducting dues without consent and waiver of First Amendment rights; and (2) a violation of Plaintiffs' First Amendment rights pursuant to 42 U.S.C. § 1983 due to Defendants' revocation policy. [Doc. No. 29 at ¶¶ 46–55.]

Defendants moved to dismiss the FAC on August 14, 2020. [Doc. Nos. 30, 31.] On September 16, 2020, UPTE filed a notice of supplemental authority to inform the Court of a controlling Ninth Circuit decision issued in *Belgau v. Inslee*, No. 19-35137 (9th Cir. Sept. 16, 2020). [Doc. No. 35.] In light of UPTE's notice and upon review of *Belgau*, the Court requested supplemental briefing to explain how Plaintiffs' claims survive. [Doc. No. 36.] Plaintiffs filed the supplemental brief on September 24, 2020 [Doc. No. 37], and Defendants filed responses on October 1, 2020. [Doc. Nos. 38, 39.]

## II.   LEGAL STANDARD

The familiar standards on a motion to dismiss apply here. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, the Court "accept[s] factual allegations in the complaint as true and construe[s] the

pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotation marks omitted).

### III.   DISCUSSION

This case follows a string of cases filed throughout the country following the Supreme Court's decision in *Janus v. American Federation of State, County, and Municipal Employees, Council 31*, which held that compelling nonmembers to subsidize union speech is offensive to the First Amendment. ––– U.S. –––, 138 S. Ct. 2448, 201 L.Ed.2d 924 (2018). This Court addressed similar legal questions in an analogous case earlier this year. *See Quirarte v. United Domestic Workers AFSCME Local 3930*, 438 F. Supp. 3d 1108, 1118 (S.D. Cal. 2020) ("Plaintiffs have not cited to, and the Court has been unable to find on its own, any case that has broadened the scope of *Janus* to apply Plaintiffs' waiver requirement argument when employees voluntarily agree to become members of the union and authorize the deduction of union dues."). Additionally, the Court finds the Ninth Circuit's recently issued decision in *Belgau v. Inslee*, No. 19-35137, 2020 WL 5541390 (9th Cir. Sept. 16, 2020), controlling on the facts of this case. For the same reasons set forth in *Quirarte* and *Belgau*, and discussed further below, Plaintiffs claims fail under 42 U.S.C. § 1983 for lack of state action and failure to state a First Amendment violation.

### A. State Action

Plaintiffs bring both causes of action pursuant to 42 U.S.C. § 1983. To prove a § 1983 violation, Plaintiffs must demonstrate that the Defendants: "(1) deprived them of a right secured by the Constitution, and (2) acted under color of state law." *Collins v. Womancare*, 878 F.2d 1145, 1147 (9th Cir. 1989); 42 U.S.C. § 1983. "The state-action element in § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (quotations and citation omitted). "[C]onstitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 994 (9th Cir. 2013) (emphasis in original). However, "[u]nder § 1983, a claim may lie against a private party who 'is a willful participant in joint action with the State or its agents. Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions.'" *DeGrassi v. City of Glendora*, 207 F.3d 636, 647 (9th Cir. 2000) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980)). "[A] bare allegation of such joint action will not overcome a motion to dismiss; the plaintiff must allege 'facts tending to show that [the private party] acted 'under color of state law or authority.'" *Id.* (quoting *Sykes v. State of Cal.*, 497 F.2d 197, 202 (9th Cir. 1974)); *see also Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900 (9th Cir. 2008).

Courts use a two-prong framework to analyze "when governmental involvement in private action is itself sufficient in character and impact that the government fairly can be viewed as responsible for the harm of which the plaintiff complains." *Ohno*, 723 F.3d at 994. First, the court considers "whether the claimed constitutional deprivation resulted from the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." *Id*. Second, the court considers "whether the party charged with the deprivation could be described in all fairness as a state actor." *Id*.

### 1. Whether Plaintiffs' Alleged Harm Results from the Exercise of a Right or Privilege Created by the State or a Rule Imposed by the State

Plaintiffs allege the source of state action in this case stems from the University President's deduction of dues from employee wages in support of UPTE. [Doc. No. 32 at 26.] The Court is not persuaded that this amounts to state action.

"The fact that the State performs a ministerial function of collecting Plaintiffs' dues deductions does not mean that Plaintiffs' alleged harm is the result of state action." *Smith v. Teamsters Local 2010*, 2019 WL 6647935, at *5 (C.D. Cal. Dec. 3, 2019). "Automatic payroll deductions are the sort of ministerial act that do not convert the Union Defendants' membership dues and expenditures decisions into state action." *Bain v. California Teachers Ass'n*, 2016 WL 6804921, at *8 (C.D. Cal. May 2, 2016); *see also Caviness*, 590 F.3d at 817 ("[A]ction taken by private entities with the mere approval or acquiescence of the State is not state action") (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999)); *Belgau v. Inslee*, 359 F. Supp. 3d 1000, 1015 (W.D. Wash. 2019) ("The State Defendants' obligation to deduct fees in accordance with the authorization 'agreements does not transform decisions about membership requirements [that they pay dues for a year] into state action.'") (quoting *Bain*, 2016 WL 6804921, at *7).

Here, the "source of the alleged constitutional harm is not a state statute or policy but the particular private agreement between" UPTE and Plaintiffs. *Belgau*, 2020 WL 5541390 at *4 (internal quotations omitted). The case law on this point is clear—the deduction of dues on the basis of a contractual agreement between private parties amounts to nothing more than a ministerial function involving no further action with the State. The agreements themselves state that Plaintiffs "agree voluntarily to contribute . . . paying a service fee in an amount equal to dues" and "direct [University] to deduct this service from [Plaintiffs'] monthly pay." The State or University were not involved in drafting UPTE's agreements that Plaintiffs entered into. Accordingly, Plaintiffs' § 1983 claims fail to satisfy the first prong requiring the claimed constitutional deprivation resulted from the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State

or by a person for whom the State is responsible.

## 2. Whether the Defendants are State Actors

"The state actor requirement ensures that not all private parties face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them." *Collins*, 878 F.2d at 1151. "The Supreme Court has articulated four tests for determining whether a [non-governmental person's] actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Ohno*, 723 F.3d at 995 (quoting *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012)).

A private party is generally not bound by the First Amendment, *see United Steelworkers of Am. v. Sadlowski*, 457 U.S. 102, 121 n.16 (1982), unless it has acted "in concert" with the state "in effecting a particular deprivation of constitutional right," *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012) (citations omitted). Joint action exists where the government either "(1) affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party, or (2) otherwise has so far insinuated itself into a position of interdependence with the non-governmental party, that it is recognized as a joint participant in the challenged activity." *Belgau*, 2020 WL 5541390, at *4 (quoting *Ohno*, 723 F.3d at 996) (internal quotation marks omitted). Ultimately, under any test, no government involvement is present here.

In Plaintiffs' supplemental briefing, Plaintiffs argue the facts in this case are starkly different than *Belgau* because here Plaintiffs were required to attend a mandatory orientation session where UPTE representatives instructed Plaintiffs to hand over the forms with their signatures. The Court is not convinced. As discussed above, the terms of the form are clear that becoming a member and authorizing the dues deduction was voluntary. In Plaintiff Labarrere's unsworn statement, he states that the representatives told Plaintiffs, "We need that form back from you." [Doc. No. 37-2 at 2.] While Plaintiffs argue the representatives told Plaintiffs to hand over "the forms" signed, that statement merely suggests the forms needed to be returned, signed or unsigned. Like in *Belgau*, any role by

the State or University here was to permit the private choice of the parties, a role that is neither significant nor coercive. *See Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 54 (1999) (requiring "significant assistance"); *Lugar*, 457 U.S. at 937 (requiring "significant aid"). The private party cannot be treated like a state actor where the government's involvement was only to provide "mere approval or acquiescence," "subtle encouragement," or "permission of a private choice." *See Sullivan*, 526 U.S. at 52–54.

Moreover, as UPTE points out, a private actor who violates state law is not acting pursuant to "state policy," and the conduct cannot be attributed to the state. *See Collins v. Womancare*, 878 F.2d 1145, 1151–52 (9th Cir. 1989). Plaintiffs' allegations of misconduct by UPTE's representatives cannot form the basis for a § 1983 claim and would need to be pursued through an unfair practice charge with the Public Employment Relations Board ("PERB"). *Mendez v. Cal. Teachers Ass'n, et al.*, 419 F. Supp. 3d 1182, 1187 (N.D. Cal. 2020); *Office & Prof'l Emps. Int'l Union, Local 29*, PERB Dec. No. 2236-M, 2012 WL 898617 (Cal. Public Employment Relations Bd. 2012) (unfair practice charge to inform employee that union membership was mandatory). PERB was established with exclusive jurisdiction to adjudicate unfair labor practice charges: "The initial determination as to whether the charges of unfair practices are justified, and, if so, what remedy is necessary to effectuate the purposes of this chapter, shall be a matter within the exclusive jurisdiction of the board." Cal. Gov't Code § 3563.2.

Accordingly, because Plaintiffs' private dues deduction agreements do not trigger state action and independent constitutional scrutiny, Plaintiffs' claims are **DISMISSED**.

### B. First Amendment Violation

Even if Plaintiffs had sufficiently alleged state action, Plaintiffs' claims would still fail for failure to demonstrate a First Amendment violation. As this Court and the Ninth Circuit has held, the *Janus* waiver requirement does not apply under the circumstances of a voluntary union member. In *Janus*, the plaintiff never signed a union membership agreement that authorized a dues deduction assignment. *Janus* specifically concerned the "deduct[ions] from a nonmember's wages" without "affirmative[ ] consent[ ]." *Id*. at 2486.

Notably, "the relationship between unions and their voluntary members was not at issue in *Janus*." *Cooley v. Cal. Statewide Law Enf't Ass'n*, 2019 WL 331170, at *2 (E.D. Cal. Jan. 25, 2019). When an employee agrees to union membership and authorizes a dues deduction assignment, an employee is consenting to financially support the union and its "many positions during collective bargaining," *see id*. at 2464, and therefore his speech is not compelled. Because dues deductions do not violate a voluntary member's First Amendment right not to be compelled to speak, the *Janus* waiver requirement does not apply to voluntary members. *See Belgau*, 359 F. Supp. 3d at 1016-17 (W.D. Wash. 2019) ("*Janus* does not apply here -- Janus was not a union member, unlike the Plaintiffs here, and Janus did not agree to a dues deduction, unlike the Plaintiffs here.").

Plaintiffs in this case voluntarily agreed to union membership and deduction of union dues with the agreed upon revocation policy. Plaintiffs' restrictive revocation policy allegations likewise are without merit. *See NLRB v. U.S. Postal Service*, 827 F.2d 548, 550 (9th Cir. 1987) (where plaintiff signed a dues authorization card that was irrevocable for one year, and resigned his membership early, he could not escape the terms of the signed authorization, because a "party's duty to perform even a wholly executory contract is not excused merely because he decides that he no longer wants the consideration for which he has bargained"). "Where the employee has a choice of union membership and the employee chooses to join, the union membership money is not coerced. The employee is a union member voluntarily." *Kidwell v. Transp. Commc'ns Int'l Union*, 946 F.2d 283, 293 (4th Cir. 1991); *see also Anderson v. Serv. Emps. Int'l Union Local 503*, 400 F. Supp. 3d 1113, 1116-18 (D. Or. 2019) ("To the extent that Plaintiffs may argue they were 'coerced' into membership, the Court does not agree."). As every court that has been confronted with similar claims has concluded, Plaintiffs' claims fail to allege a First Amendment violation. Accordingly, Defendants' motions to dismiss are **GRANTED**.

### IV.   CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Defendants' motions to dismiss. Because no First Amendment violation or state action can be shown, no

amendment will be able to cure the deficiencies of Plaintiffs' complaint.  Accordingly, this case is **DISMISSED with prejudice** and the Clerk of Court shall **CLOSE** this matter.

It is **SO ORDERED**.

Dated:  October 9, 2020

Hon. Cathy Ann Bencivengo
United States District Judge